IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TANISHA WILLIS, | : | Case No.4:04-CV-2606 |
| | : | |
| Plaintiff | : | |
| | : | Judge Jones |
| v. | : | |
| | : | |
| AMERICAN CUSTOMER CARE, | : | |
| | : | |
| Defendant | : | |

**MEMORANDUM AND ORDER**

**October 25, 2006**

Pending before the Court is Defendant American Customer Care's ("Defendant" or "ACC") Motion for Summary Judgment ("the Motion")(doc. 39) filed on September 1, 2006.

For the reasons that follow, the Motion will be granted in part and denied in part.

**PROCEDURAL HISTORY:**

On December 3, 2004, Plaintiff Tanisha Willis ("Plaintiff" or "Willis") commenced this action by filing a complaint in the United States District Court for the Middle District of Pennsylvania against the above-referenced Defendant. (Rec. Doc. 1). The complaint raises claims for racial discrimination under 42 U.S.C. §

1981 (Count I), breach of contract (Count II), and promissory estoppel/detrimental reliance (Count III). On February 7, 2005, the Defendant answered the complaint. (Rec. Doc. 6).

On September 1, 2006, the Defendant filed the instant Motion along with statement of facts. (Rec. Docs. 39 and 40). On September 11, 2006, Defendant filed a supporting brief. (Rec. Doc. 44). On September 29, 2006, Plaintiff filed a brief in opposition to the Motion with counterstatement of material facts. (Rec. Docs. 45 and 46). A reply brief was filed by the Defendant on October 19, 2006. (Rec. Doc. 50). Accordingly, the Motion has been fully briefed and is therefore ripe for our review.

## **STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED .R. CIV. .P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d

Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."

Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## STATEMENT OF RELEVANT FACTS:

Plaintiff is an African American. (Rec. Doc. 40 at ¶1).[1] Defendant is a Pennsylvania corporation that operates inbound and outbound contact centers and has a facility in Montoursville, Pennsylvania. ACC's customers contract with ACC to have telephone calls made or received on their behalf. (Rec. Doc. 40 at ¶2). On or about August 2004, ACC hired Plaintiff as a Corporate Trainer to be based in its Montoursville facility. (Rec. Doc. 40 at ¶3). The Corporate Trainer position was a new position that had been created by ACC immediately prior to Plaintiff being hired. ACC had never previously employed a Corporate Trainer.

---

[1] In the interest of brevity, where factual allegations are not disputed, we shall refer only to the Defendant's statement of facts, Record Document 40.

(Rec. Doc. 40 at ¶6). Upon the beginning of her employment, Plaintiff was given an Orientation packet that contained an "Employment At Will Disclaimer." (Rec. Doc. 40 at ¶5). Plaintiff, however, denies that she was hired as an at-will employee. (Rec. Doc. 45 at ¶4).

The Corporate Trainer was to be the "face" of ACC to its large corporate clients and would be the primary representative of ACC. (Rec. Doc. 40 at ¶7). ACC advertised the position of Corporate Trainer by various means, including the use of two recruiting firms, and ultimately narrowed down the field of candidates to five qualified candidates. (Rec. Doc. 40 at ¶8). ACC was aware that Plaintiff was African American at the time she was interviewed and hired by ACC to be the "face" of the ACC company. (Rec. Doc. 40 at ¶9). The other four candidates for the job included a Caucasian male, Caucasian female, an African American male, and an African American female. (Rec. Doc. 40 at ¶10).

Plaintiff an her family (husband, son and daughter) planned to move to Montoursville from Ohio, where they resided prior to Plaintiff's acceptance of the job. The plan was for Plaintiff to move first and then for the family to follow. (Rec. Doc. 40 at ¶15). Defendant alleges that ACC management personnel observed, that from the time Plaintiff accepted the position, she was consumed, almost to the point of obsession, about whether she and her family could ever

adjust to what she perceived as a lack of openness to diversity in the Montoursville, Pennsylvania area. Defendant also alleges that Plaintiff repeatedly posed questions to those with whom she worked about the diversity of the Montoursville area and the school system. (Rec. Doc. 40 at ¶13-14). Defendant alleges that ACC's management personnel observed that Plaintiff's obsession with these issues was having a serious impact on her job performance in terms of her attitude, her apparent level of commitment to the position, her ability to satisfactorily perform the duties and responsibilities of her job, and her general emotional stability. (Rec. Doc. 40 at ¶16-17). Plaintiff denies these allegations.

Defendant alleges that the first indication of instability occurred after Plaintiff had accepted the Corporate Trainer position, but prior to her official starting date. ACC requested Plaintiff to attend a meeting with an important prospective corporate client. Plaintiff agreed to attend but arrived late to the meeting. (Rec. Doc. 40 at ¶18). Plaintiff alleges that this allegation of "instability" is utterly false, and the reason for her lateness was difficulty with accommodations and that recruiter Clark Smith was aware of this fact. (Rec. Doc. 45 at ¶18). Defendant alleges that another example of Plaintiff's emotional instability was an occasion when Plaintiff burst into tears in front of 180-200 employees after being informed that her cable installation would be later than anticipated. (Rec. Doc. 40

at ¶20). Defendant alleges that ACC's management personnel were concerned that Plaintiff would not be a long-term employee, based upon their observations of her behavior. (Rec. Doc. 40 at ¶22). Plaintiff alleges that Defendant's agents have fabricated the purported "instability" and "lack of commitment" bases for Plaintiff's termination. (Rec. Doc. 45 at ¶20-24).

Defendant alleges that based upon their observation of Plaintiff's continued behavior, the concern of ACC management personnel became so great that on September 13, 2004, Michael Shea ("Shea") and Rodd Furlough ("Furlough"), Plaintiff's immediate supervisors, had a telephone conference with Jeff Neistat ("Neistat"), one of the owners of the company, to apprise him of the situation. Defendant alleges that Niestat shared Shea and Furlough's concerns that, based upon her behavior, it did not appear that Plaintiff would be a long term employee and that her instability and temperament indicated that she was not a good fit for the Corporate Trainer position. (Rec. Doc. 40 at ¶24). Defendants further allege that based upon their determination that Plaintiff was not a good fit for the position, it was best to terminate her before her family was uprooted from their home in Ohio and moved to Montoursville. On September 13, 2004, Plaintiff met with Shea, Furlough, and Lisa Furlough. Furlough and Shea told her she was being terminated from employment with ACC. (Rec. Doc. 40 at ¶11, ¶26).

Plaintiff alleges that the decision to terminate her was made based upon input from two employees of Defendant, Rod Furlough and Mike Shea. Plaintiff alleges that Furlough, the director of inbound operations, testified that the reasons for Plaintiff's termination were two-fold: emotional instability and lack of commitment to the job. (Rec. Doc. 45 at ¶13). Furlough testified as to one incident of alleged emotional instability that he personally observed, namely an occasion on which Plaintiff was upset and in tears because of difficulties in finding what she considered to be a suitable living arrangement. Furlough also testified that he had informed about a lunch that Plaintiff had with Barbara Leidecker during which Plaintiff allegedly discussed her concerns about the area.[2] With respect to Plaintiff's alleged lack of commitment to the job, Furlough testified at his deposition that Plaintiff's statements (i.e. she was not comfortable with the move, her family was going to struggle, she was uncomfortable with the schooling) were indicative that she was not committed to the move or the job. (Rec. Doc. 45 at ¶13). Plaintiff denies making statements of this kind. At his deposition, Shea testified that he attributed Plaintiff's termination to . . . concern over her instability over this first couple of weeks [of employment]." He alleges that this determination was based on the same incidents testified to by Furlough. (Rec. Doc.

---

[2] According to Furlough's testimony, a portion of the conversation between Plaintiff and Leidecker involved race. (Rec. Doc. 45 at ¶45).

45 at ¶13).

Subsequent to Plaintiff's termination, ACC has not filled the position of Corporate Trainer and has not been interviewing candidates for the position. (Rec. Doc. 40 at ¶30).

**DISCUSSION**:

In the Motion, Defendant moves for summary judgment with respect to Plaintiff's three claims: racial discrimination pursuant to 42 U.S.C. § 1981, breach of contract and promissory estoppel. We shall analyze the merits of each claim in turn.

### A.    Count I - § 1981 Claim

Claims of racial discrimination without direct evidence of discrimination brought pursuant to 42 U.S.C. § 1981 are analyzed under the familiar burden-shifting standard first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

As the Third Circuit Court of Appeals has noted:

Briefly summarized, the McDonnell Douglas analysis proceeds in three stages. First, the plaintiff must establish a *prima facie* case of discrimination.[3] If the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant to articulate some legitimate,

---

[3] The plaintiff bears the burden of production to establish the *prima facie* case. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

>  nondiscriminatory reason for the employee's [termination].[4]  Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999)(citing McDonnell Douglas, 411 U.S. at 802).

Under the McDonnell Douglas standard, a *prima facie* case of discrimination has four general elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff was terminated despite those qualifications and (4) after the termination, the job remained open and the employer sought applicants with the plaintiff's qualifications.

In this action, it not disputed that Plaintiff, an African-American, was terminated from her position Corporate Trainer for ACC.  Moreover, inasmuch as Defendant hired Plaintiff, it is not disputed that Plaintiff was qualified for the Corporate Trainer position.  Following Plaintiff's termination, the job has remained open.  It is apparent that Plaintiff has succeeded to establish a *prima facie* case under the McDonnell Douglas framework.

As noted, once Plaintiff has established a *prima facie* case, the "burden of

---

[4] The defendant bears the burden of production to establish a legitimate, nondiscriminatory reason for the adverse employment action.  See Fuentes, 32 F.3d at 763.

10

production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's [termination]." Fuentes, 32 F.3d at 763 (quoting McDonnell Douglas, 411 U.S. at 802). "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Id. (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 508 (1993)). "The employer need not prove that the tendered reason actually motivated is behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the Plaintiff." Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

In this action, Defendant's articulated legitimate, nondiscriminatory reasons for terminating Plaintiff's employment are two-fold: (1) perceived emotional instability and (2) perceived lack of commitment to the job. Inasmuch as the burden of articulating a legitimate, nondiscriminatory reason is a light one, we find that the Defendant has satisfied its burden by providing the above-mentioned two reasons. Moreover, both Shea and Furlough testified that they were involved in the decision to terminate Plaintiff and that her perceived instability and lack of commitment were the only reasons for her termination.

"Once the employer answers its relatively light burden by articulating a

legitimate reason for the unfavorable employment decision, the burden of production now rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Id. "[T]he plaintiff must convince the factfinder 'both that the reason was false, and that discrimination was the real reason.'" Id. (quoting Hicks, 509 U.S. at 515-516). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post-hoc fabrication or otherwise did not actually motivate the employment action." Id. at 764 (internal citations omitted).

"To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer . . . [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. at 765 (internal citations omitted).

Plaintiff asserts that Defendant's cited reasons for Plaintiff's termination,

emotional instability and lack of commitment to the job, are utterly false.  In support of her argument, Plaintiff states that these purported reasons were not the reasons cited to her at the termination meeting on September 13, 2004.   Plaintiff testified that, at the termination meeting, she was told that:

> they had a concern about whether or not I was going to stay in the area.  They had a concern about the position.  And that the three of them had talked and they decided that they didn't think that this was going to be something good for me.  That they really felt that they had made a mistake in asking me to come here, and that they had talked to Jeff, and that he had given them permission to reverse the hiring decision.  He said – he said, he has given us permission to fix the mistake.  So, we are going to reverse our hiring decision . . . Then Rod started to talk and he says, you know, Lisa and I have talked about it and we know what a hard time our kids had acclimating to the area, or "fitting in" was his words . . . We know how hard our, how hard a time our kids had fitting in here, you know, we know that it will be twice as has hard for your kids.

(Rec. Doc. 46, Ex. B, Deposition of Plaintiff, p. 124, ll. 7-25).  Plaintiff further testified that Furlough told her she was still the best person for the job, but "we just think that in six months you will hate it here and you will quit."  (Rec. Doc. 46, Ex. B, p. 125, ll. 8-11).

Plaintiff's essential argument is that both Shea and Furlough's testimony indicate that the reasons articulated for Plaintiff's termination were post-hoc fabrications.   Plaintiff argues that both Furlough and Shea could largely only point to piecemeal second-hand information regarding Plaintiff's alleged "emotional

instability." Plaintiff further argues that neither Shea nor Furlough could identify anything Plaintiff actually said to indicate a lack of commitment to the job.

Finally, Plaintiff asserts that Clark Smith's ("Smith") testimony is direct evidence of discriminatory motive and tends to show that the Defendant's articulated reasons are pretextual. Plaintiff argues that Smith, the recruiter, testified that both Shea and Furlough contacted him following Plaintiff's hire and expressed concerns about how Plaintiff would "fit in." Particularly, Smith testified that Furlough and Shea expressed concerns that

> " . . . there was – were not a lot of people of color in the area and that well, see, I'm not even sure whether [Plaintiff] had expressed that concern to them or whether they were concerned for her . . . [T]hey were concerned that Tanisha's daughter would not be accepted in the community.  Tanisha's desire for her daughter, things like ballet school or jazz dancing or something, I don't recall, and that they weren't sure that, you know, a person of color would be accepted in those."

(Rec. Doc. 46, Ex. G., Deposition of Clark Smith, p. 22, ll. 23-25; p. 27, ll. 17-24). Plaintiff argues that Smith's testimony not only reveals that the decision to fire Plaintiff was based on her race, but also casts significant doubt on the reasons proffered by Defendant for her termination.

A review of the evidence before us, mainly the testimony of the Plaintiff, Shea, Furlough and Smith, lead us to the conclusion that a genuine issue of fact remains as to whether Defendant's proffered legitimate, nondiscriminatory reasons

for Plaintiff's termination are pretextual. For example, the exchange between Smith and Shea and Furlough clearly reveals that Plaintiff's race was a stated topic of the conversation. In light of all the evidence before us, it would be imprudent to grant summary judgment at this juncture, because Plaintiff has presented evidence that arguably raises at least an inference of discrimination. Accordingly, we will deny the Defendant's Motion with respect to Count I of the complaint.

### B.    Counts II and III- Breach of Contract and Promissory Estoppel

Under Pennsylvania law, there exists a rebuttable presumption that employment is on an at-will basis. See Geary v. United States Steel Corp., 456 Pa. 171 (1974); DiBonaventura v. Consolidated Rail Corp., 539 A.2d 865, 867 (Pa. Super. 1988). Generally, at-will employees may be terminated at any time, for any reason or for no reason. See Stumpp v. Stroudsburg Municipal Auth., 540 Pa. 391 (1995). The burden of overcoming the at-will presumption rests with the employee. See Luteran v. Loral Fairchild Corp., 688 A.2d 211, 214 (Pa. Super. 1997).

"In order to rebut the presumption of at-will employment, a party must establish one of the following: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy

exception." Pinderski v. Commonwealth Telephone Enterprises, Inc., 2006 U.S. Dist. LEXIS 50783, *4-5 (M.D. Pa. 2006)(Munley, J.)(quoting Luteran, 688 A.2d at 214). "Sufficient additional consideration" is present where "an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or *when the employee undergoes a substantial hardship* other than the services which he is hired to perform." Pinderski, 2006 U.S. Dist. LEXIS at *5 (quoting Darlington v. General Electric, 504 A.2d 306, 315 (Pa. Super. 1986).

As noted by the Defendant, the issue of whether an employee has given sufficient additional consideration to rebut the presumption is "ordinarily" a jury question. Peremeter v. Crown Cork & Seal Co., 38 F. Supp. 2d 372, 379 (E.D. Pa. 1999). However, a court may decide the issue when the "evidence is so clear that no reasonable [person] would determine the issue before the court in any way but one." Id. (citations omitted).

Plaintiff argues that Defendant's Motion with respect to Count II should be denied because Plaintiff provided sufficient additional consideration, and thus the presumption of at-will employment has been rebutted. Plaintiff cites the case of Cashdollar v. Mercy Hosp., 595 A.2d 70 (Pa. Super. 1991) to support her argument. In Cashdollar, the court found sufficient additional consideration where

an employee left an existing job, sold his home in Virginia and moved his pregnant wife and young child to Pittsburgh from Virginia.  Likewise, additional consideration was also found where an employee quit his existing job, rejected a different job offer, sold his home in Massachusetts and purchased a home in Pennsylvania, see News Printing Co. Inc., v. Roundy, 597 A.2d 662, 665 (Pa. Super. 1991), and where the employee left his current employment and an offered increase in salary, sold his home in California, and made a move to Pennsylvania, where he purchased property and planned to buy a house.  See Scullion v. EMECO Industries, Inc., 580 A.2d 1356, 1369 (Pa. Super. 1990).

Defendant argues that despite Plaintiff's argument that she provided sufficient additional consideration, her claim must fail because she was given an orientation packet that included a document entitled "Employment At Will Disclaimer."  See e.g., Peremeter, 38 F. Supp. 2d at 380 (plaintiff signed two documents that prominently stated he was an at-will employee, therefore the court was constrained to interpret the relationship as an at-will contract); Sharp v. BI/IP Int'l Inc., 991 F. Supp. 451, 458 (E. D. Pa. 1998)("If the parties specifically agreed that the employment would be at-will, even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at- will").  Plaintiff does not dispute that she

received the "Employment At Will Disclaimer." (Rec. Doc. 45 at ¶5; Rec. Doc. 41, Ex. C).

Despite the fact that Plaintiff herself moved to Pennsylvania, left her former job, signed a one-year lease on a house, and prepared for her family to relocate from Ohio to Pennsylvania, Plaintiff's admitted receipt of the "Employment At Will Disclaimer" constrains this court to construe her employment as of an at-will nature. To do otherwise would render the disclaimer meaningless. It indicates that Plaintiff's at-will status was made fully known to her at the inception of her employment, and thus deprives her of the argument that this status was somehow eviscerated by the additional consideration she claims to have provided. It logically follows that Plaintiff cannot maintain a action sounding in contract due to the at-will nature of the employment relationship between herself and Defendant. Accordingly, we shall grant the Defendant's Motion with respect to Count II.

### C. Count III - Promissory Estoppel

The Pennsylvania Supreme Court has ruled that promissory estoppel is not an exception to the general rule of at-will employment. Paul v. Lankanau Hosp., 569 A.2d 346, 348 (Pa. 1990). Specifically, the court has ruled that "[a]n employee may be discharged with [or] without cause, and our law does not prohibit firing an employee for relying on an employer's promise." Id.

As previously noted, we are constrained to view the Plaintiff's employment with Defendant as an at-will employment, and accordingly, Plaintiff's claim of promissory estoppel must necessarily fail and we shall grant the Defendant's Motion with respect to Count III.

**CONCLUSION**:

For the reasons stated herein, we shall grant the Defendant's Motion with respect to Counts II (Breach of Contract) and III (Promissory Estoppel) of the complaint. We shall deny the Defendant's Motion with respect to Count I (42 U.S.C. § 1981 claim) inasmuch as we find a genuine issue of material fact remains as to whether the Defendant's articulated legitimate nondiscriminatory reasons are pretext for discrimination.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (doc. 39) is GRANTED in part and DENIED in part to the following extent:

    a. Summary Judgment is GRANTED with respect to Counts II and III.

    b. Summary Judgment is DENIED with respect to Count I.

2. The Clerk shall enter judgment in favor of the Defendant and against the Plaintiff on Counts II and III of the complaint.

s/ John E. Jones III
John E. Jones III
United States District Judge
